**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **BRUNO NGORAN KOFFI,** | : |
| **GAYLE KAREN KOFFI,** | : |
| **PLAINTIFFS,** | : |
| | : **CIVIL ACTION NO. 3:09cv2102(VLB)** |
| | : |
| **v.** | : **JULY 18, 2011** |
| | : |
| **ERIC H. HOLDER, JR., ATTORNEY** | : |
| **GENERAL OF THE UNITED STATES,** | : |
| **DEFENDANT.** | : |

<u>**MEMORANDUM OF DECISION GRANTING DEFENDANT'S [DOC. #28] MOTION**
**FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' CROSS [Doc.#30 ]**
**MOTION FOR SUMMARY JUDGMENT**</u>

Before the Court is a motion for summary judgment filed by the Defendant, Eric H. Holder, JR. Attorney General of the United States and a cross motion for summary judgment filed by Plaintiffs, Bruno Ngoran Koffi ("Koffi") and his wife Gayle Karen Koffi, nee Mischler ("Mischler").[1]  Plaintiffs have filed a petition for review of the Board of Immigration Appeal's ("BIA") decision to affirm the denial of Plaintiffs' I-130 petition to establish an immediate-relative relationship between Koffi and his third wife American Mischler.  In its decision, the BIA reasoned that the record of evidence supported a finding that Koffi's first marriage was

---

[1] Defendant argues that Plaintiffs' cross motion for summary judgment is untimely as it was filed three weeks after the deadline for dispositive motions and as such it should be denied and its arguments only considered to the extent they bear on whether Defendant is entitled to summary judgment.  As the Court has ruled in favor of Defendants, the Court need not address the Defendant's argument regarding the untimely filing of Plaintiffs' cross motion for summary judgment. The Court further notes that as this action does not involve counterclaims that Plaintiffs' cross motion for summary judgment is equivalent in many ways to a response to Defendant's motion for summary judgment which was timely filed.

fraudulent and therefore 8 U.S.C. § 1154 (c) applied and served as a bar to approval of the I-130 petition. Plaintiffs argue that the BIA's decision was arbitrary and capricious as there was no substantial and probative evidence to support the BIA's conclusion that Koffi's first marriage was fraudulent, that the BIA abused its discretion by failing to consider the marriage fraud allegations when the 1-130 petition filed by Koffi's second American wife was approved and by not providing Koffi with a copy of a memorandum that detailed the criminal investigation of Koffi's former immigration attorney and her assistants for operating a marriage fraud scheme which identified Koffi's first marriage as fraudulent. Plaintiffs further contend that the BIA failed to conduct a *de novo* review and relied on the memorandum to the exclusion of all other evidence in an abuse of discretion until the present action. On the other hand, Defendant contends that the BIA did not abuse its discretion and that the BIA's conclusions were based on a reasoned review of all the evidence in the record and that it was not arbitrary and capricious for the BIA to determine that Koffi's first marriage was fraudulent thereby denying Koffi's current I-130 petition predicated on his third marriage. For the reasons stated hereafter, Defendant's motion for summary judgment is granted and Plaintiffs' cross motion for summary judgment is denied.

## Background and Facts

This action was originally filed with the Second Circuit of Appeals. On December 17, 2009 the Second Circuit determined that it lacked jurisdiction to hear the claim as 8 U.S.C. § 1252(a)(1) grants the Court of Appeals jurisdiction to

review only final orders of removal and a denial of an I-130 petition does not constitute a final order of removal. *Ruiz v. Mukasey*, 552 F.3d 269, 271 (2d Cir. 2009). In addition, the Second Circuit concluded that the District Court has jurisdiction to hear the claim since the decision to deny an I-130 petition is not a decision committed to the discretion of the Attorney General and therefore the District Court is not barred from hearing such a cause of action under 8 U.S.C. § 1252 (a)(2)(B)(ii). *Id.*

The following facts relevant to both Defendant's motion for summary judgment and Plaintiffs' cross motion for summary judgment are undisputed unless otherwise noted. Plaintiff Koffi is a citizen and national of the Ivory Coast. On July 8, 1990, he entered the Unites States on a J-1 exchange visa and overstayed his visa. [Doc.# 23, Administrative Record ("AR") at 306]. Koffi has resided continuously in the United States except for one trip in 2000 back to the Ivory Coast to attend his mother's funeral. [*Id.* at 134]. Koffi has had three different marriages to United States citizens and has attempted to obtain lawful permanent status based on each of these marriages. [Doc. #28-2, Defendant's Local Rule 56(a)1 Statement].

In order for an alien to obtain lawful permanent status based on a marriage to a United States citizen, the American spouse must first file an I-130 petition and establish that there exists a bona fide spousal "immediate relative" relationship. 8 U.S.C. § 1154 (a)(1)(A)(i). Once the I-130 petition is granted and the alien is classified as an immediate relative of a United States citizen, the alien becomes eligible to seek an adjustment of status to a lawful permanent resident

by filing a Form I-485 Application to Register Permanent Resident or Adjust Status.  8 U.S.C. § 1255 (a).   In connection with an I-130 petition, the petitioner carries the burden of proving the claimed relationship by a preponderance of the evidence.  *Matter of Brantigan*, 11 I. & N. Dec. 493, 495 (BIA 1966); *Egan v. Weiss*, 119 F.3d 106, 107 (2d Cir. 1997).  Koffi has been married three times and each of his American wives has filed an I-130 petition on his behalf.

On February 3, 1993, Koffi married his first wife Alexine Odom ("Odom") in Arlington, Virginia.  [Doc. #23, AR at 326,337-347].  On February 8, 1993, Odom filed a Form I-130 on behalf of Koffi, which was prepared and submitted by Koffi's immigration attorney, My Ling Duong Soland ("Soland").   Sometime afterward, Koffi and Odom left the Alrington area and moved to Pittsburgh, Pennsylvania. Koffi and Odom were interviewed by the legacy Immigration and Naturalization Service ("INS") on April 26, 1993 in connection with the I-130 petition and the couple submitted several documents to establish the bona fide nature of their marriage as required by 8 C.F.R. § 204.2(a)(1)(i)(B).  They submitted (1) a letter dated October 19, 1994 from the owner of their Pittsburgh residence, stating that Koffi and Odam were tenants, but that Odom at the present time is away; (2) bills and credit cards in both spouse's names; and (3) documentation that Odom was listed as the beneficiary on Koffi's health insurance, life insurance, and dental plans.  [Doc. #23, AR at 358,360, 362].

In July 1994 while Koffi and Odom's I-130 petition was pending, INS commenced an investigation against Koffi's immigration attorney Soland culminating with criminal charges being brought against Soland and two of her

assistants for arranging fraudulent marriages between foreign clients and United State citizens. Soland's foreign clients would pay a fee between approximately $5,000 to $6,000 to be matched with a United States citizen and Soland's assistants helped her recruit United States citizens and arrange the fraudulent marriages. Two of Soland's assistants were criminally convicted for their role in the marriage fraud scheme, but received reduced sentences for cooperating with the government's case. Soland's assistants provided INS with information about the marriages they had arranged including a list of over forty fraudulent marriages including Koffi and Odom's marriage. A memorandum, dated January 22, 1996, from the INS's Office of Investigations (Washington D.C.) memorializing the investigation was placed in Koffi's agency file and specifically noted that Koffi and Odom's marriage had been identified as a fraudulent marriage arranged by Soland. [Doc. #28-2]. On June 13, 1995, Soland plead guilty to a two-count information charging her with Conspiracy to Commit Marriage Fraud and False Statements, and Obstruction of Justice/Witness Intimidation.

On June 7, 1995, Koffi divorced Odom while Odom's I-130 petition was still pending. INS terminated Odom's I-130 petition as Koffi could no longer be qualified as a spousal immediate relative of Odom as a result of the divorce. Two months later on August 31, 1995, Koffi married his second wife Ellean Trammel ("Trammel") in Pittsburgh and she filed an I-130 petition on Koffi's behalf on February 12, 1996 which was approved on March 30, 1996 or April 15, 1996. [Doc. #28-2]. Koffi then filed a Form I-485 application for adjustment of status. In a letter dated November 1, 1996, Koffi informed INS that he was having problems

with his second marriage, that he and Trammel were living apart and requested information on what procedure he needed to follow.  On May 19, 1997,  INS interviewed Koffi and Trammel in connection with the Form I-485 application and the couple testified that they had only cohabitated as husband and wife for three months, having lived apart since November 1995 but that they were trying to work things out.  On September 15, 1997, INS received notice from Koffi that he alone had moved from Pittsburgh to West Harford, Connecticut.  [*id.*].  On January 9, 1998, INS issued a Notice of Intent to Revoke ("NOIR") of the I-130 petition on the basis that the couple was no longer living together.  In a letter dated May 21, 1998, nearly three years after Koffi notified INS that he was estranged from her, Trammel notified INS that she and Koffi had reconciled and were living together in West Hartford.  On May 18, 1999, Koffi and Trammel were interviewed by INS in Connecticut in in connection with Trammel's I-130 petition.  [*Id.*].

On October 25, 1999, INS issued another NOIR in connection with the I-130 but this time the basis was that Koffi's first marriage to Odom was fraudulent.   In the NOIR, INS explained that "a review of the beneficiary's immigration file reflects that beneficiary's prior attorney was indicted for Conspiracy to Commit Marriage Fraud and False Statements" and "the names of the beneficiary and a prior spouse were provided as to one of the arranged marriages."  The NOIR also provided that Koffi and his second wife Trammel had 30 days to respond and rebut the allegations.  [Doc. #28-2].  On November 16, 1999, they responded denying that Koffi's first marriage to Odom was fraudulent and provided evidence of the bona fide nature of Koffi's first marriage.   Most of the evidence was

duplicative of the material that Koffi had first submitted with his and Odom's I-130 petition that was filed in February, 1993.  However, Koffi also submitted a letter from Soland dated October 25, 1994 forwarding a copy of Koffi's file to his new immigration attorney that Koffi engaged when he moved to Pittsburgh.   Koffi does not claim that Soland's letter contained any statements supporting the legitimacy of his marriage to Odom.   On March 15, 2000, the INS officially revoked its approval of the I-130 petition on the basis that it did not receive a response to the NOIR.  Koffi and Trammel did not appeal the decision.  [Doc. #28-2].

In December 1999, Koffi traveled to the Ivory Coast to attend his mother's funeral.  [Doc.# 23, AR at 134].  On June 17, 2000, Koffi illegally re-entered the country on a tourist visa which he fraudulently obtained through using his brother's passport.

On October 26, 2004, Koffi obtained a divorce from Trammel his second wife and less than a year later married his third wife Mischler on August 5, 2005. Mischler filed an I-130 petition on June 5, 2007 and submitted documentation supporting the bona fide nature of their marriage.  Koffi and Mischler were interviewed by U.S. Citizenship and Immigration Services ("USCIS") in connection with Mischler's I-130 petition on November 19, 2007 and were asked about the circumstances surrounding the marriage fraud allegations.  Koffi again denied that his first marriage to Odom had been arranged.   Koffi asserts that he met Odom at a wedding in November 1992 and only retained Soland after he was married.  [Doc. # 32].  On November 26, 2008 USCIS issued a Notice of Intent to

7

Deny ("NOID") the I-130 petition pursuant to Immigration and Nationality Act § 204 (c) 8 U.S.C. § 1554(c) stating that while Koffi and Mischler's marriage appear to be bona fide, Koffi's first marriage to Odom appeared to be fraudulent based on the information contained in the memorandum memorializing the investigation and indictment of Soland and her assistants. [Doc.#28-2]. The NOID provided Koffi with thirty days to respond and submit evidence. [*Id*.].

On December 22, 2007, Koffi responded to the NOID and provided the following evidence of the *bona fide* nature of his first marriage: (1) a letter from their attorney questioning whether the intended denial comported with due process; (2) an affidavit from Koffi stating that his first marriage had not been arranged and that he met Soland after he was married to Odom and that he retained a new immigration attorney after he moved to Pittsburgh; (3) an affidavit from Odom stating that her marriage to Koffi was not fraudulent and that she did not receive any money from Soland; (4) the same letter from Koffi and Odom's landlord in Pittsburgh that Koffi and Odom had originally submitted in connection with their I-130 petition stating that while Koffi and Odom were both tenants, Odom was away; and (5) bills addressed to Koffi and Odom at the Pittsburgh address. [Doc.# 28-2].

On December 24, 2008, USCIS denied Koffi and Mischler's I-130 petition pursuant to 8 U.S.C. §1154 (c) noting that the marriage had been identified by Soland's assistants as one of over forty marriages that Soland had arranged and that Koffi divorced Odom in the same month that Soland had pled guilty to the charges against her. In its reasoning, the USCIS also noted that since entering

8

the U.S. in 1990 Bruno had married three different United States citizens. He divorced Odom just two months before he married his second wife Trammel and that in June 2000 he entered the United States illegally using his brother's passport and nonimmigrant visa. In June 2001, Koffi also applied for political asylum. USCIS articulated that "[i]n short, [Koffi] appears to have been remarkably diligent in his efforts to enter the U.S. and remain permanently in the U.S. While it may be legal, of course, to have multiple marriages and to apply for political asylum, [Koffi's] particular immigration history in the U.S. does not incline us to grant him the benefit of the doubt in the present proceedings consisting largely of a he-said she-said controversy involving marriage fraud. In summary, we will be guided by the conclusion of the marriage fraud investigation involving Attorney Soland's arrangement of fraudulent marriages." [Doc.# 23, AR at 128].

Under 8 U.S.C. §1154 (c), "[n]o [I-130] petition shall be approved if . . . the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws." *See also Osakwe v. Mukasey*, 534 F.3d 977, 979 (8th Cir. 2008) ("It goes without saying that the CIS's determination of marriage fraud carries great consequences as an alien may be permanently ineligible to obtain an I-130 visa even if he subsequently enters into a bona fide marriage with a U.S. citizen") (*citing* 8 U.S.C. §1154 (c)).

On September 23, 2009, Plaintiffs requested USCIS to reopen the I-130 petition on their *sua sponte* authority based on new evidence, namely a polygraph test completed by Koffi answering four questions regarding the nature

of his first marriage. [Doc. #23, AR at 64-74]. The Court notes that new evidence cannot be considered by the BIA on appeal and therefore the polygraph test was not included as part of the record of evidence the BIA reviewed and accordingly is not part of the administrative record before the Court. *See Matter of Soriano*, 19 I. & N. Dec. 764, 765 (BIA 1988).

Koffi and Mischler filed an appeal of the denial of the I-130 petition with the BIA on January 20, 2009 asserting that they had established the *bona fide* nature of Koffi's first marriage and that the marriage fraud finding amounted to guilt by association. [Doc. #28-2]. On May 15, 2008 the BIA dismissed the appeal and stated that after reviewing "the record of proceedings, including the Director's decision; the November 6, 2008 [NOID]; the petitioner's response to the NOID; and the petitioner's contentions on appeal. We affirm the decision of the Director for the reasons set forth in the December 2008 decision and the November 2008 NOID. We agree with the Director that the record supports a finding that the beneficiary entered into a prior marriage that was for the purpose of evading the immigration laws." [Doc. #23, AR at 6-7]. In addition, the BIA's decision provides a summary of the material contained in Koffi's record that it reviewed in making its determination. [*Id.* at n. 1].

On May 29, 2009, Koffi and Mischler filed a petition for review with the Second Circuit of Appeals to challenge the BIA's decision. On December 17, 2009 the Second Circuit found that it lacked jurisdiction to hear this claim and transferred the action to this Court.

<u>Standard for Summary Judgment</u>

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of proving that no factual issues exist.  *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010).  "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought."  *Id.*, (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  "If there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party, summary judgment must be denied."  *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 315-16 (2d Cir. 2006) (internal quotation marks and citation omitted).

<u>Analysis of Plaintiffs' argument that Plaintiffs have met their burden to show that Koffi's first marriage was *bona fide*</u>

Plaintiffs argue that they have met their burden to show that Koffi's first marriage was *bona fide* by a preponderance of the evidence.  In particular, Plaintiffs assert that the record contained extensive documentation to support a finding that Koffi and Odom's marriage was lawful and *bona fide* and that "this evidence reflects a shared marital address, commingling of finances, and evidence of the couple's life together over the course of two years."  [Doc. #31 at

9].  Further, Plaintiffs argue that "Defendant erred in failing to consider the evidence of a *bona fide* marriage."  [*Id.*].

Pursuant to the Administrative Procedures Act ("APA"), agency action is entitled to judicial deference unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 41 (1983).  Courts should engage in a "narrow" scope of review and refrain from "subsitut[ing[ its judgment for that of the agency."  *Id.* at 43.  "Agency conduct that rises to this high level includes decisions that lack rational explanations, fail to consider relevant evidence, depart without explanation from established policies, are devoid of any reasoning, contain merely cursory or conclusory statements or are based on irrational or bad-faith exercises of power."  *Ruiz v. Dep't of Homeland Sec.*, 3:09-cv-95, 2010 WL 3257641, at *2 (D.Conn. Aug. 16, 2010) (internal quotation marks and citations omitted).   Courts "review an agency's factual findings under the substantial evidence standard, treating them as 'conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'"  *Emokah v. Mukasey*, 523 F.3d 110, 116 (2d Cir. 2008) (*citing* 8 U.S.C. § 1252(b)(4)(B)).

Therefore the Court is mindful that its review is limited to assessing the Defendant's decision for abuse of discretion as opposed to conducting a *de novo* review of the record of evidence itself and coming to an independent determination that Plaintiffs' have met their burden to prove the *bona fides* of Koffi's first marriage.  The Court notes that it may not substitute its own judgment

for that of the agency, even if it might arrive at a different conclusion and therefore the Court cannot determine whether Plaintiff have met their burden in the first instance.  *See Motor Vehicles Mfrs. Ass'n of the U.S., Inc.*, 463 U.S. at 43. Rather the Court's inquiry is limited to whether the BIA arbitrarily and in an abuse of discretion determined that Plaintiffs did not meet their burden to show that Koffi's first marriage was *bona fide*.

As Plaintiffs argue they did present evidence which reflected that Koffi and Odom "shared marital address, commingling of finances, and evidence of the couple's life together over the course of two years."  For example, Plaintiffs provided a letter from Koffi and Odom's Pittsburgh landlord, various bills and bank statements addressed to the couple, and point to the fact that Odom is listed as Koffi's beneficiary on various medical and life insurance policies.  [Doc. #31 at 9].

However, the Court disagrees with Koffi's assertion that Defendant "erred in failing to consider the evidence of a *bona fide* marriage" as there is evidence in the record that both the BIA and the USCIS[2] considered Plaintiffs' evidence in their decisions to deny Mischler's I-130 petition on behalf of Koffi.  [Doc. #31 at 9]. The BIA in its May 2009 decision explicitly stated that it did review all the evidence in the record: "We have reviewed the record of proceedings, including

_____

[2] Since the BIA's decision affirming the USCIS's denial of Mischler's I-130 petition on behalf of Koffi adopted the reasons set forth in USCIS's December 2008 decision and the November 2008 NOID, the Court will review both the BIA and the USCIS's decisions.  *Emokah v. Mukasey*, 523 F.3d 110, 116 (2d Cir. 2008) ("Because the BIA fully adopted the [Immigration Judge's] decision, we review the decisions of both the BIA and [Immigration Judge].").

the Director's decision, the November 6, 2008 Notice of Intent to Deny ("NOID"); the petitioner's response to the NOID; and the petitioner's contentions on appeal." [Doc.# 23, AR at 6]. Moreover, the BIA's decision in a footnote also provides a list of the materials contained in the record that were reviewed. [*Id.*]. *See Tandel v. Holder*, C-09-01319, 2009 WL 2871126, at *5 (N.D.Cal. Sept. 1, 2009) (rejecting plaintiffs' argument that USCIS's decision should be reversed on the basis that USCIS failed to consider Plaintiffs' evidence in its decision to revoke since USCIS's revocation decision listed the evidence submitted by plaintiffs demonstrating that the agency considered it). In USCIS's December Decision, it specifically listed out the evidence Plaintiffs provided to rebut Defendant's assertion of marriage fraud and explicitly stated that it had assessed the reliability of such evidence. [Doc. #23, AR at 128]. Therefore Defendant did consider Plaintiffs' evidence regarding the *bona fide* nature of Koffi's first marriage.

Moreover, there is evidence that the BIA and USCIS did not abuse its discretion in considering whether Plaintiffs have met their burden to show that Koffi's first marriage was *bona fide*. The BIA and the USCIS reasonably weighed Plaintiffs' evidence against other evidence in the record demonstrating that Koffi's first marriage was fraudulent in coming to its determination that Plaintiffs had failed to meet their burden to prove the *bona fides* of Koffi's first marriage. Such evidence demonstrating the fraudulent nature of Koffi's first marriage included a memorandum dated January 22, 1996 from INS's Office of Investigations Washington, D.C. (the "1996 Memorandum") which detailed the

investigation and criminal conviction of Koffi and Odom's former immigration attorney Soland and her assistants and included a list provided by Soland's assistants of 40 fraudulent marriages which identified Koffi and Odom's marriage as fraudulent. In addition, Koffi's illegal entry into the United States in June 2000 using his brother's passport and his application for asylum also undermined Plaintiffs' evidence regarding the *bona fides* of Koffi's first marriage. Finally, Koffi's landlord noted that Odom was away from which it was not unreasonable to infer that despite being newlywed Koffi and Odom were not living together.

Lastly, Koffi's history of repeated attempts to remain permanently in the United States through a fast succession of multiple marriages to United States citizens likewise undermined a finding that Koffi's first marriage was *bona fide*. On February 3, 1993, Koffi married his first wife Odom and just five days later Odom filed an I-130 petition on Koffi's behalf on February 8, 1993. A week before Koffi and Odom's immigration attorney Soland plead guilty to a charge of Conspiracy to Commit Marriage Fraud and False Statements, and Obstruction of Justice/Witness Intimidation, Koffi divorced Odom on June 7, 1995 which resulted in Odom's I-130 petition on behalf of Koffi being terminated. Two months later, Koffi married his second American wife, Trammel, on August 31, 1995 and then Trammel filed an I-130 petition on Koffi's behalf on February 12, 1996. On October 26, 2004, Koffi obtained a divorce from Trammel his second American wife and less than a year later on August 5, 2005 Koffi married his third American wife, Mischler, who then filed an I-130 petition on Koffi's behalf on June 5, 2007. Therefore, the BIA and the USCIS's decision was based on relevant evidence

which a reasonable mind would accept as adequate to support the conclusion that Plaintiffs have failed to meet their burden to show the *bona fides* of Koffi's first marriage.  Accordingly, the Court finds that the BIA and USCIS did not abuse their discretion in concluding that Plaintiffs failed to meet their burden to show that Koffi's first marriage was *bona fide*.

### Analysis of Plaintiffs' argument that the record evidence supports a finding that Koffi's first marriage was *bona fide*

Plaintiffs assert not only that they met their burden to show by a preponderance of the evidence that Koffi's first marriage was *bona fide* but that the "record contains extensive evidence to show that Mr. Koffi's first marriage was valid at inception" and that "Defendant has overlooked and failed to adequately consider the evidence of a *bona fide* marriage."  [Doc. #31 at 10].

Plaintiff cites to the evidence Koffi and Odom submitted in support of Odom's original I-130 petition which included: "their marriage certificate (AR. 353), a letter from their landlord [stating they were not living together] (AR. 356), a gas bill (Ar. 357), life insurance showing Ms. Odom as the beneficiary (AR. 285, 358), a dental plan for the couple (AR. 360), a US Healthcare change form listing Ms. Odom as a beneficiary (AR. 362), retirement plans listing Ms. Odom as a beneficiary (AR. 364, 373), Citibank cards and bank statements (AR. 368, 284, 288), a JCPenny account statement (AR. 290), and an income tax return from 1993. (AR. 377). In addition, Ms. Odom included a copy of her birth certificate and social security card. (AR. 352)."  [Doc.# 31 at 11].  In addition, Plaintiffs cite to the evidence Koffi and Trammel submitted in connection with Trammel's I-130

petition on Koffi's behalf in response to the 1999 NOIR to rebut the marriage fraud allegations including an affidavit from Odom explaining the circumstances how she and Koffi met, stating that she did not know Attorney Soland prior to her marriage to Koffi, stating that Koffi retained Soland because she "professional and courteous. She was a very friendly person and she spoke French fluently," and explaining the circumstances regarding her divorce from Koffi. [*Id.*].

Plaintiffs argue that "[o]n its face, the evidence is more than sufficient to meet the Plaintiffs' burden to prove Mr. Koffi's lawful, *bona fide* marriage to Ms. Odom." [Doc.# 31 at 11]. However, this argument is premised on an assessment of just the evidence that Plaintiffs presented. Plaintiffs are essentially asking the Court to look only at the evidence submitted in support of the *bona fide* nature of Koffi's first marriage and nothing else. If the record before the BIA and USCIS only included the evidence that Plaintiffs submitted and relied on and nothing else, a reasonable person could conclude that Koffi's first marriage was *bona fide*. However, the record of evidence before the BIA and USCIS also included substantial evidence regarding the fraudulent nature of Koffi's first marriage as noted above. Therefore, the Court cannot ignore the fact that such other evidence existed particularly since this other evidence was the basis upon which the BIA and USCIS determined that the record evidence did not support a finding that Koffi's first marriage was *bona fide*.

As explained above, while Plaintiffs presented such evidence that supported the *bona fide* nature of Koffi's first marriage, there was also substantial evidence in the record that demonstrated that Koffi's first marriage

was fraudulent such as the fact that Odom and Koffi were not living together, the 1996 Memorandum and the timeline of Koffi's three marriages to American women within months of each other. Both the BIA and the USCIS took into consideration the evidence Plaintiffs submitted demonstrating the *bona fide* nature of Koffi's first marriage as well as the evidence that supported a finding that Koffi's first marriage was fraudulent. The BIA and USCIS assessed the credibility of and weighed such evidence and ultimately concluded that the evidence demonstrating the fraudulent nature of Koffi's first marriage outweighed the evidence to the contrary. The USCIS articulated that "[i]n short, [Koffi] appears to have been remarkably diligent in his efforts to enter the U.S. and remain permanently in the U.S. While it may be legal, of course, to have multiple marriages and to apply for political asylum, [Koffi's] particular immigration history in the U.S. does not incline us to grant him the benefit of the doubt in the present proceedings consisting largely of a he-said she-said controversy involving marriage fraud. In summary, we will be guided by the conclusion of the marriage fraud investigation involving Attorney Soland's arrangement of fraudulent marriages." [Doc.# 23, AR at 128]. Therefore, the BIA and the USCIS's decision was based on relevant evidence which a reasonable mind would accept as adequate to support the conclusion that the record evidence did not support a finding that Koffi's first marriage was *bona fide*.

Plaintiffs also argue that their evidence is sufficient because the "same type of evidence was relied upon to approve the I-130 Petition filed by Mr. Koffi's second wife, Ellean [Trammel] Koffi, and to recognize the *bona fides* of the

current marriage to Gayle [Mischler] Koffi." [Doc. # 31 at 12]. However, the record of evidence that was before the INS when it approved Trammel's I-130 petition in spring of 1996 and concluded that Trammel's marriage to Koffi was *bona fide* was substantially different than the record of evidence before the BIA and USCIS when it denied Mischler's I-130 petition and concluded that Odom's marriage to Koffi was fraudulent. While, it is true that Koffi and Trammel submitted similar types of evidence to support the *bona fides* of their marriage as Plaintiffs submitted to support the *bona fides* of Koffi and Odom's marriage, there was no evidence in the record that suggested that Koffi and Trammel's marriage was fraudulent as was the case with Koffi and Odom's marriage. For example, when the BIA and USCIS assessed Koffi's and Odom's marriage in 2007, there was substantial evidence which cast significant doubt on the *bona fide* nature of the marriage including the 1996 Memorandum, Koffi's illegal reentry into the Unites States, Koffi's application for asylum, and Koffi's pattern of quick successive marriages. When INS assessed Koffi and Trammel's marriage there was simply no equivalent evidence that casted doubt on the *bona fide* nature of that marriage. For example, Koffi and Trammel's marriage had not been identified as fraudulent pursuant to a criminal investigation, in 1996 Koffi had not yet applied for asylum or illegally reentered the United States on his brother's passport, and Koffi at that point had only one prior marriage so there was not an established pattern of successive marriages. Since the facts and evidence were substantially different in connection with INS's assessment of the *bona fides* of Trammel and Koffi's marriage than from the BIA and USCIS's assessment of the

*bona fides* of Koffi and Odom's marriage, the Court finds Plaintiffs' argument that they presented sufficient evidence because the "same type of evidence was relied upon to approve the I-130 Petition filed by [Trammel]" unpersuasive.

Plaintiff also argues that they have provided sufficient evidence of the *bona fides* of Koffi and Odom's marriage because "the same type of evidence was relied upon .. to recognize the *bona fides* of the current marriage to [Mischler]". [Doc. # 31 at 12].  The USCIS in its November 2008 NOID noted that while Mischler's marriage to "Bruno Koffi appears to be *bona fide*" that they intended to deny the I-130 petition based on their conclusion that Koffi's first marriage to Odom was fraudulent.  [Doc. #23, AR at 125].  As explained above, there was also no evidence in the record with regard to Mischler's marriage to Koffi which suggested that it was fraudulent.  However, there was ample evidence in the record which supported a finding that Odom's marriage to Koffi was fraudulent.  Accordingly, Plaintiffs' argument in this regard is likewise unpersuasive.

<u>Analysis of Plaintiffs' argument that there is not substantial and probative evidence to support a finding of  marriage fraud</u>

Plaintiffs argue that "[t]he Defendant has not shown substantial and probative evidence to support the allegation of a fraudulent marriage between Mr. Koffi and his first wife, Ms. Odom."  [Doc. # 31 at 13].  Plaintiffs further argue that "Defendant attempts to rely on the 1996 Memorandum as his sole basis for a marriage fraud finding." [*Id.*].  However, as explained above, the BIA and the USCIS did not rely solely on the 1996 Memorandum in concluding that Koffi's first marriage was fraudulent, but considered and weighed all of the evidence in the

record.  In the December 2008 Decision, USCIS explicitly summarized and assessed all of the evidence that Koffi had submitted to rebut the marriage fraud allegations and the BIA also summarized and noted the evidence in the record that it reviewed and assessed.  [Doc.# 23, AR at 128, 6-7].  In addition, the USCIS also explicitly articulated and enumerated the other evidence beyond the 1996 Memorandum that supported a finding of marriage fraud: "In our assessment of the reliability of your rebuttal to our notice of intent to deny, we note the following. Since entering the U.S. as a J-l exchange visitor in 1990, Bruno has been married to three U.S. citizen women, and divorced from two. Approximately two months after his June *1995* divorce from Alexine [Odom], he married his second U.S. citizen wife. In June 2000, he apparently entered the U.S. illegally, using his brother's passport and nonimmigrant visa. In June 2001, he applied for political asylum."  [*Id.*].  Therefore, the Court finds that the BIA and the USCIS did not rely solely on the 1996 Memorandum but rather assessed and weighed all the evidence in the record.  Moreover as explained above, this evidence in conjunction with the 1996 Memorandum presented substantial evidence from which a reasonable mind could conclude that Koffi's first marriage was fraudulent.

Plaintiff also argues that the 1996 Memorandum is not credible or probative evidence of marriage fraud noting that in a similar case *In re Azzab*, A79053230, 2007 WL 3301607 (BIA 2007), "the Board of Immigration Appeals ('Board') found that evidence obtained by the government's secret informants does not meet this standard because it is unreliable."  [Doc. # 31 at 13].  However, the facts of *Azzab*

are inapposite to the present case.  In *Azzab*, the BIA reviewed a determination of marriage fraud based on information gathered from a secret informant who called INS claiming that the beneficiary's prior marriage was a sham.  The secret information was corroborated by three other unnamed individuals which were described in the Notice of Intent to Deny as "testimony obtained from these individuals and the 'observances … [of these] sources … do not reflect the usual sharing of experiences of a couple who marry out of love and affection."  The BIA concluded that such evidence was unreliable as it was based on

> four secret informants, the only evidence of their 'testimony' is contained in the undated, handwritten notes of an [INS] officer whose own name nowhere appears on the notes.  There is no tape or formal transcript to refer to in interpreting these handwritten notes, either.  Secondly, there is no indication that any of this so-called 'testimony' was obtained following the administration of an oath… Thirdly the notes themselves are simply incoherent, unclear, and ambiguous… There is no official source who could, at a minim how this derogatory information was gathered. *In re Azzab*, 2007 WL 3301607 at *3.

Conversely, the information that was included in the 1996 Memorandum was not obtained from secret informants nor based on telephone calls.  Instead, the 1996 Memorandum summarized the results of a criminal investigation by INS's Office of Investigations Washington, D.C. which culminated in the criminal convictions of Soland and her two assistants.  The 1996 Memorandum was not incoherent or handwritten but instead a detailed, coherent, professional and unambiguous report.   In order to arrest Soland or her assistants, INS officers would have had to sign affidavits detailing their basis for concluding there was probable cause for the arrest and present that affidavit to a judge for the issuance of the warrant.  There are therefore many indicators regarding the reliability of the

1996 Memorandum which were missing in *Azzab* and accordingly the Court finds that it was not an abuse of discretion for Defendant to consider the 1996 Memorandum nor was it an abuse of discretion for Defendant to find that the 1996 Memorandum provided credible evidence supporting a finding of marriage fraud.

Plaintiffs also cite another case to support their proposition that the 1996 Memorandum was unreliable. Plaintiffs note that in *In re: Abdallah M.H. Alawneh*, 2009 WL 2981756, at \*2 (BIA 2009) "the Board found that there was not 'substantial and probative evidence of fraud' when the report of a 'home investigation' was not part of the record and the 'vague assertion[s]' were contradicted by a sworn affidavit." [Doc. #31 at 14]. However, the facts of *Abdallah* are also inapposite to the present case as the BIA concluded that it could not rely on the results of the home inspection report itself in coming to a finding regarding marriage fraud as the report was not a part of the record before the BIA. However, in the present case the 1996 Memorandum was a part of the BIA's record. Moreover, the contents of the 1996 Memorandum were not vague assertions but instead contained specific and detailed information that was the result of a criminal investigation which lead to the convictions of Koffi and Odom's former immigration attorney and assistants. The fact that Odom and Koffi each provided sworn affidavits contradicting the 1996 Memorandum is simply not analogous to the affidavits in *Abdallah* as the BIA had before it a credible, specific, and detailed memorandum summarizing the results of a criminal investigation as opposed to in *Abdallah* where all the BIA had before it

was USCIS's vague description of a home inspection report. Nor do these affidavits obviate the memorandum and require the BIA to disregard it.

Plaintiffs further cite to *Azzab* for the principle that "the evidence obtained from the government's secret informant does not meet this standard because it is … deprives the petitioner of any meaningful opportunity to confront and rebut the derogatory information." [Doc. #31 at 14]. Plaintiff also cite to *Matter of Obaigbena*, 19 I&N Dec. 533 (BIA 1988) and 8 C.F.R. § 103.2 (b)(16)(i) for the proposition that INS is required to inform a petitioner of derogatory information to be used against him or her and must give the petitioner a reasonable amount of time to rebut that information. [*Id.*]. Plaintiffs seem to be suggesting Defendant's consideration of the 1996 Memorandum deprived them of a "meaningful opportunity to rebut the derogatory information" contained in the memorandum.

However, it is undisputed that Plaintiffs were notified of the derogatory information and given the opportunity to rebut the derogatory information in connection with the 1999 NOIR and again in connection with the 2007 NOID. [Doc. #28-2]. In the 1999 NOIR, INS informed Koffi of the details of the investigation and conviction of Koffi's former immigration attorney Soland and her assistants, which included the facts that the investigation revealed that at least 40 marriages had been arranged by Soland and that Koffi's first marriage had been identified by Soland's assistants as fraudulent. [*Id.*]. It is also undisputed that Koffi and Trammel were given thirty days to respond to the marriage fraud allegations raised in the 1999 NOIR and did so on November 16, 1999. It is also undisputed that USCIS issued a NOID on November 6, 2008 on the

basis of the marriage fraud allegation and also provided a detailed summary of the investigation and allegations. [*Id.*]. It is likewise undisputed that Plaintiffs were given thirty days to respond to the NOID and provide rebuttal evidence which they did on December 27, 2007. [*Id.*].

Plaintiffs also argue that the 1996 Memorandum does not meet the standard to be considered substantial or probative evidence as "it relies upon a secret investigation and Memorandum whose contents were only vaguely referred to for the first time in the Notice of Intent to Revoke the I-130 Petition of Ellean Koffi in 1999. (AR 30). Subsequently, in 2008 the Memorandum was finally referred to in more detail, but the Defendant did not provide a copy of the Memorandum for adequate rebuttal. (AR 125)." [Doc. 31 at 17]. As the Court explained above, Defendant did provide sufficient notice of the marriage fraud allegations in the 1999 NOIR and the 2007 NOID. In the 1999 NOIR, USCIS specifically stated "a review of the beneficiary's immigration file reflects that beneficiary's prior attorney was indicated for Conspiracy to Commit Marriage Fraud and False Statements" and "the names of the beneficiary and a prior spouse were provided as to one of the arranged marriages." [Doc. #23, AR at 30]. The 1999 NOIR therefore provided a specific description of the allegations and the basis for those allegations and therefore the Court disagrees with Plaintiffs that the NOIR only vaguely referred to the contents of the Memorandum. The 1999 NOIR and 2007 NOID both provided sufficient information to alert Plaintiffs that Koffi's first marriage was identified as fraudulently arranged by his former immigration attorney who was indicted for conspiracy to commit marriage fraud.

Plaintiffs have not identified what specific information in the actual 1996 Memorandum that was not provided in the 1999 NOIR or 2007 NOID was critical to their ability to rebut the marriage fraud allegations.  As Defendant points out, Plaintiffs have not demonstrated how receiving a copy of the 1996 Memorandum would have altered their response and or changed the type of evidence that they would have presented to rebut the marriage fraud allegations.  Nor do the Plaintiffs contend that Koffi sought and was denied information relative to the investigation, prosecutions, and convictions referenced in the 1996 Memorandum.

Lastly, Plaintiffs argue that Defendant's conclusion that Koffi's first marriage was fraudulent was undermined by the fact that "Mr. Koffi and Ms. Odom have not been indicted or charged with any form of marriage fraud, as regularly occurs when persons enter into a marriage for the purpose of evading immigration laws." [Doc. #31 at 15].   However, the fact that Defendant exercised his prosecutorial discretion and did not indict or charge Koffi or Odom with marriage fraud does not support an inference that Koffi's first marriage was not fraudulent.  A decision not to prosecute cannot be inferred to be a determination on the merits of Koffi's first marriage.

Plaintiffs reiterate that "Defendant has not pointed to substantial and probative evidence in the record. The only evidence relied upon by the Defendants - in denying the I-130 Petition and in filing their Motion for Summary Judgment – is the 1996 Memorandum. (AR. 034-39; 162)(Doc. No. 28-2). This singular piece of evidence is not substantial when considered against all

conflicting evidence. (AR 68-70, 140-41, 143-161)." [Doc. #31 at 15]. As explained above, Defendant has not relied solely on the 1996 Memorandum in its determination and further the Court does not find it an abuse of discretion to consider the 1996 Memorandum credible evidence regarding the fraudulent nature of Koffi's first marriage. Lastly as explained above, the Court finds that a reasonable mind might accept that the weight of the evidence demonstrating the fraudulent nature of Koffi's first marriage outweighed Plaintiffs' evidence to the contrary. Plaintiffs have not provided such overwhelming evidence regarding the *bona fides* of Koffi's first marriage such that a reasonable fact-finder would have to conclude that Koffi's first marriage was *bona fide* based on a consideration of all the evidence in the record.

### Analysis of Plaintiffs' argument that the 1996 Memorandum cannot receive more weight than any other evidence in the record

Plaintiffs recast their prior argument slightly and argue that the Defendant "abused his discretion in relying solely on the 1996 Memorandum to the exclusion of other evidence" and that "[i]t is arbitrary and capricious to give the 1996 Memorandum more weight than other evidence in the record." [Doc. #31 at 15-16]. However as explained above, the BIA and USCIS clearly weighed and considered all the evidence in the record including Plaintiffs' evidence as well as other evidence suggesting Koffi's first marriage was fraudulent in addition to the 1996 Memorandum.

Further, the Court finds no evidence that Defendant gave the 1996 Memorandum more weight than other evidence in the record as the USCIS

weighed the other evidence beyond the 1996 Memorandum that supported a conclusion that Koffi's first marriage was fraudulent in determining whether to rely on the 1996 Memorandum in the first place and give credence to its allegations of marriage fraud: "[i]n short, [Koffi] appears to have been remarkably diligent in his efforts to enter the U.S. and remain permanently in the U.S. While it may be legal, of course, to have multiple marriages and to apply for political asylum, [Koffi's] *particular immigration history in the U.S. does not incline us to grant him the benefit of the doubt in the present proceedings consisting largely of a he-said she-said controversy involving marriage fraud.* In summary, we will be guided by the conclusion of the marriage fraud investigation involving Attorney Soland's arrangement of fraudulent marriages." [Doc.# 23, AR at 128] (emphasis added).

Plaintiffs also recast their prior argument regarding the credibility of the 1996 Memorandum by arguing that "Defendant cannot verify any information concerning or within said Memorandum" and that "absent from the record is any evidence as to how the investigation was conducted or any other information to support the validity of the investigation." [Doc. # 31 at 16-17]. However, the 1996 Memorandum does detail how the criminal investigation was initiated including specific details regarding the progression of the investigation such as the fact that INS executed a search warrant at Soland's office in Falls Church, VA. [Doc. #23, AR at 34-35]. Moreover, the fact that arrest and search warrants were obtained and INS indicted Soland and her two assistants also attests to the validity of the investigation as INS had to have presented evidence supporting

probable cause in order to have obtained such warrants and then provided substantial evidence to obtain such convictions.

Plaintiffs further argue that in the 1996 Memorandum there is "no way of knowing whether the list of alleged fraudulent marriages is a general list of suspected fraudulent marriages or whether someone with personal knowledge gave first-hand testimony; whether the information was obtained from a person who worked directly with the alleged fraudulent spouses or from someone who believed they knew the names of people involved solely from handling files." [Doc. #31 at 16-17]. However, the 1996 Memorandum states that Soland's assistants who were criminally convicted "provided INS with approximately 30 marries they had arranged…the marriages that have been identified as fraudulent are listed as" [Doc. #23, AR at 35]. Therefore, the 1996 Memorandum clearly states that the list of fraudulent marriages was provided by someone with personal knowledge who gave first-hand testimony.

Lastly, Plaintiff argues that "the 1996 Memorandum can only be given its proper weight – that of a self-serving report without supporting evidence in the record." [Doc. #31 at 17]. However, as explained above it was not an abuse of discretion to consider the 1996 Memorandum as reliable and credible evidence regarding marriage fraud and Defendant reasonably weighed the memorandum in its determination that Koffi's first marriage was fraudulent.

**Analysis of Plaintiffs' argument that the agency abused its discretion in failing to raise the *bona fides* of Koffi's first marriage when it adjudicated the second I-130 petition, not raising the issues until 1999 and not**

**providing a copy of memorandum until 2010 thereby preventing Plaintiffs from adequately responding**

Plaintiffs argue that "Koffi did not have any meaningful opportunity [to] rebut the [derogatory] information because the Memorandum was not released to the Petitioner until this lawsuit in 2010" and that "[t]he late disclosure of the Memorandum is not adequate grounds for denying the I-130 Petition because it deprived the petitioner of any meaningful opportunity to confront and rebut the derogatory information." [Doc. #31 at 17]. However Plaintiffs' arguments are belied by the record, which demonstrates that Plaintiffs had ample opportunity to present evidence in support of the *bona fide* nature of Koffi's first marriage to rebut the allegations of marriage fraud which were sufficiently described in both the 1999 NOIR and the 2007 NOID. Koffi was first given the opportunity to present evidence after USCIS issued the NOIR in connection with Trammel's I-130 petition on October 25, 1999 and then given another opportunity to present evidence after USCIS issued the NOID in connection with Mischler's I-130 petition on December 22, 2007. Plaintiffs responded to both the NOIR in 1999 and the NOID in 2007 with additional evidence to rebut the marriage fraud allegations. *See Ayanbadejo v. Napolitano*, H-06-1177, 2009 WL 2996992, at *8 n.10 (S.D. Tex. Sept. 15, 2009) (rejecting Plaintiffs' argument that they were denied due process in connection with their I-130 petition since they were not afforded with the opportunity to present evidence including live witnesses, to cross-examine, the right to subpoena witnesses and documents, [and] the right to inspect the record of proceedings and concluding that Plaintiffs "were afforded with ample opportunity

to present evidence in support of both the initial I-130 Petition and the second I-130 Petition."); *Dhillon v. Mayorkas*, C-10-0723, 2010 WL 1338132, at *10 (N.D. Cal. April 5, 2010) (finding that plaintiffs "did have the opportunity to present any evidence in support of their case. In this case at least, it should not have been difficult to provide some rebuttal to the government's evidence because [plaintiffs] should have had possession, custody, or control of evidence to support the claimed legitimacy [of a prior] marriage").

Moreover as discussed above, Plaintiffs have not demonstrated how receiving a copy of the 1996 Memorandum would have would have altered their response and or changed the type of evidence that they would have presented to rebut the marriage fraud allegations nor have they identified what information is contained in the 1996 Memorandum but not provided in the 1999 NOIR and the 2007 NOID that is crucial to their rebuttal. In addition, as Defendant argues, it is also well established that the immigration agency was not required to physically turn over the 1996 Memorandum before issuing an adverse decision. *See* 8 C.F.R. § 103.2 (b)(16)(i) (stating that an alien must be advised if the decision will be adverse and is based on derogatory information considered by the service and of which the applicant is unaware); *In re Liedtke*, A070656080, 2009 WL 5548116, at *1 (BIA 2009) (explaining that 8 C.F.R. § 103.2 (b)(16)(i) does not require that the actual documents containing derogatory evidence be provided to petitioner but only requires that the petitioner be advised of the derogatory evidence). In accordance with 8 C.F.R. § 103.2, Defendant advised Plaintiff of the derogatory information in the 1999 NOIR and the 2007 NOID and then provided an

opportunity for Koffi to rebut the derogatory information. Further, Koffi could have requested additional information regarding the criminal investigation and conviction of Soland and her assistants when he was initially informed of those allegations in connection with the 1999 NOIR. Plaintiffs do not contend that Koffi sought and was wrongfully denied such information in 1999 or at any later time. For the reasons stated above, the Court finds that Koffi was not unduly prejudiced by the failure to provide the actual memorandum until 2010 and accordingly the Court does not find that it was an abuse of discretion to not provide the 1996 Memorandum until the present action.

Plaintiffs also cite to the *Matter of Singh*, 2006 WL 1558783 (BIA 2006) to support their argument that they were deprived of the opportunity to rebut the derogatory information. In *Singh* the BIA found that since the NOID did not make any allegation that the marriage was a fraud, the petitioner was therefore deprived of the opportunity to provide rebuttal evidence to the marriage fraud allegation. The facts of *Singh* are inapposite as the 1999 NOIR and the 2007 NOID both not only asserted allegations of marriage fraud but also described that the basis for those allegations was the criminal investigation and conviction of Soland and her assistants.

Plaintiffs also argue that "[b]y waiting to attack the validity of the first marriage until October 1999, the Defendant has effectively barred Mr. Koffi from obtaining additional documentation in support of his first marriage." [Doc. # 31 at 18]. In particular, Plaintiffs argue that "[b]y failing to raise an issue regarding the first marriage during adjudication of the second I-130 in 1996, the Defendant has

precluded Plaintiff Koffi from obtaining additional documentation that would have been available at that time." [*Id.*].  Plaintiffs further note that "same information was available in January 1996 – prior to the Defendant"s decision on Mr. Koffi"s second I-130 Petition. (AR 030).  By failing to raise an issue regarding the first marriage during adjudication of the second I-130 in 1996, the Defendant has precluded Plaintiff Koffi from obtaining additional documentation that would have been available at that time." [*Id.*].  However, Plaintiffs do not provide any explanation of the type of evidence that they no longer possess or how that evidence would rebut the marriage fraud allegations or altered Defendant's conclusion regarding the *bona fides* of his first marriage.  For example, Plaintiffs could have listed out the type of evidence they no longer have access to such as photographs of shared trips or events that would have enabled them to better rebut the marriage fraud allegations.

In addition, the Court does not find it unreasonable or an abuse of discretion for the INS to have approved the Trammel's I-130 petition in 1996 and then in 1999 become aware of the marriage fraud allegations which warranted a revocation of the petition as Plaintiff suggests.  Odom filed an I-130 petition on Koffi's behalf in Arlington which was then terminated when Koffi divorced Odom on June 7, 1995.  Koffi then married Trammel two months later and Trammel filed an I-130 petition in Pittsburg on February 12, 1996 which was approved on March 30, 1996 or April 15, 1996.  The 1996 Memorandum was issued by INS's Office of Investigations in Washington DC and dated January 22, 1996.  [Doc. # 28-2].  It is unclear from the record when the memorandum was actually placed in Koffi's file

and whether in spring of 1996 the Pittsburgh INS office had been notified of the 1996 Memorandum. The Court therefore does not find it unreasonable that the Pittsburgh, Pennsylvania INS officials processing the Trammel petition would have approved her I-130 petition on behalf of Koffi without knowledge of the fact that not more than four months earlier the Arlington, Virginia INS officials processing the Odom petition on behalf of Koffi had placed the January 22, 1996 Memorandum in the Odom file.

In addition, Koffi's separation from Trammel also contributed to the fact that it wasn't until 1999 that INS issued the NOIR based on the marriage fraud allegation. On November 1, 1997 Koffi informed INS that he and Trammel were living apart and on May 19, 1997 Koffi and Trammel were interviewed by INS and testified they were living apart. On January 9, 1998 INS issued a NOIR on the basis that Trammel and Koffi were no longer living together. Trammel then notified INS in letter dated May 21, 1998 that they had reconciled and were living in West Hartford, Connecticut. Therefore it wasn't until spring of 1998 when Trammel notified INS that she and Koffi had reconciled that INS really had the opportunity and occasion to review Koffi's file and therefore it was Koffi's conduct and not the omission of INS which delayed disclosure of the 1996 Memorandum.

### Analysis of Plaintiffs' argument that Defendant failed to conduct a *de novo* review

Plaintiffs argue that "[i]t is misleading for the Defendant to state that "the agency conducted a *de novo* assessment of the relevant factors, independent of

the earlier marriage fraud finding to conclude that the first marriage was a 'sham.'" [Doc. # 31 at 19]. However, Plaintiffs present no evidence to support this assertion beyond its conclusory statement alleging there was not a *de novo* review. As discussed above, this assertion is wholly without merit as the BIA in its May 2009 decision explicitly stated that it did review all the evidence in the record: "We have reviewed the record of proceedings, including the Director's decision, the November 6, 2008 Notice of Intent to Deny ("NOID"); the petitioner's response to the NOID; and the petitioner's contentions on appeal." [Doc.# 23, AR at 6]. *See Tandel v. Holder*, C-09-01319, 2009 WL 2871126, at *5 (N.D.Cal. Sept. 1, 2009).

Plaintiffs further contend that "[i]n its motion for summary judgment, the Defendant does not point to any evidence that it relied upon in conducting a 'de novo assessment.' In fact, the Defendant simply relied on the 1996 Memorandum and did not conduct a new investigation into the marriage fraud." [*Id.*]. As explained above, it is evident that both the BIA and USCIS reviewed and assessed all the evidence in the record in coming to its conclusion that Koffi's first marriage was fraudulent. In addition, Plaintiffs suggest that under a *de novo* review, the BIA was obligated to "conduct a new investigation into the marriage fraud." However, a *de novo* review only requires the BIA to independently consider the evidence in the record, which included the 1996 Memorandum, and determine the weight to give that evidence in deciding whether Mischler's I-130 petition should be denied on the basis of 8 U.S.C. § 1154 (c). *See Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 514  n.31 (1984) (noting that in a *de*

*novo* review, "a reviewing court makes an original appraisal of all the evidence to decide whether or not it believes that judgment should be entered for the plaintiff"); *see also Ping Wang v. Mukasey*, 269 F. App'x. 43, 45 (2d Cir. 2008) (noting that the BIA conducts a de novo review when it independently assesses portions of the record). As the BIA stated in its opinion, it independently considered all the evidence in the record, including the 1996 Memorandum among other items, and determined that the USCIS's decision to deny Plaintiffs' I-130 petition was warranted. [Doc. #23, AR at 6-7].

Plaintiffs also recast their prior argument and contend "that [a] *de novo* review, independent of the earlier marriage fraud finding, would most certainly have led to the conclusion that Mr. Koffi"s first marriage was a lawful one because the same type of evidence was provided for Mr. Koffi"s subsequent wives, and the corresponding marriages were found *bona fide.* " [Doc. # 31 at 19]. As discussed above, Plaintiffs' argument is premised on an assessment of just the evidence in the record that Plaintiff relies upon and Plaintiffs are asking the Court to ignore the other evidence in the record that supported a finding a marriage fraud which Defendant relied upon. Further, as discussed above the evidence and circumstances before Defendant in connection with Koffi's subsequent wives was significantly different than the evidence before Defendant in connection with Koffi's first marriage to Odom and therefore the Court finds this argument unpersuasive. Moreover, this argument is somewhat misplaced as it really is not contending that Defendant did not conduct a *de novo* review but rather contends that Defendant's decision was not supported by substantial

evidence.  As discussed above, the Court finds that Defendant's decision was in fact supported by substantial evidence such that a reasonable mind would accept as adequate the conclusion that Koffi's first marriage was fraudulent.

Lastly, Plaintiffs argue that "contrary to the Defendant's assertion, Mr. Koffi's divorce from Ms. Odom did not 'actively obstruct[] the immigration agency from issuing an adverse decision.'  Mr. Koffi should not be expected to continue in a marriage simply because the government has not issued a decision on an I-130 Petition. In fact, that is exactly the purpose of 1154(c): to permit the government to challenge the validity of a prior marriage that has since ended." [Doc. #31 at 20].  It appears to the Court that Plaintiffs are misinterpreting Defendant's argument as it does not appear that Defendant is suggesting that Koffi should have continued in his marriage to Odom.  Instead, Defendant appears to be explaining why the marriage fraud allegations only came to light in 1999 instead of sometime earlier.  When Koffi divorced Odom that resulted in Odom's I-130 petition on behalf of Koffi being terminated and as explained above it was not until years later in connection with Trammel's I-130 petition on behalf of Koffi that INS had the opportunity review Koffi's file and the information regarding the investigation of Soland and her assistants came to light.   As discussed above, the Court does not find it unreasonable or an abuse of discretion for the marriage fraud allegations to come to light when Defendant issued the 1999 NOIR and not any time sooner.   In the final analysis, the Court is mindful that its role is not to weigh the evidence itself but to determine if Defendant had abused his discretion in doing so and for the foregoing reasons

the Court finds there was relevant evidence in the record to support Defendant's conclusion that Koffi's first marriage was fraudulent warranting the denial Mischler's I-130 petition on behalf of Koffi.

<u>Conclusion</u>

Based upon the above reasoning, the Defendant's [Doc. #28] motion for summary judgment is GRANTED and Plaintiffs' [Doc. #30] cross motion for summary judgment is DENIED.

IT IS SO ORDERED.

_____/s/_____

Hon. Vanessa L. Bryant

United States District Judge

Dated at Hartford, Connecticut: July 18, 2011